IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| Louvinia Lambert, | § | |
| as next friend to D.R., a minor, and | § | |
| Verline Hartman, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:20-cv-00097 |
| | § | |
| Angelina County, Texas | § | |
| and Southern Health | § | |
| Partners, Inc., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Verline Hartman and Louvinia Lambert, as next friend to minor D.R. (collectively "Plaintiffs") file this, their Original Complaint, against Angelina County ("the County") and Southern Health Partners, Inc., ("SHP") for unlawful medical neglect resulting in the death of Janet Hartman, the daughter of Verline Hartman and mother of D.R., and would respectfully show the Court the following:

**I.
PARTIES**

1.  Plaintiffs Verline Hartman and Louvinia Lambert are residents of the State of Texas.

2. Defendant Angelina County is a county of the State of Texas and may be served with process by serving its County Judge, Don Lymbery, Angelina County Denman Building, 102 W. Frank Ave., Lufkin, TX 75904.

3. Defendant SHP is a Delaware corporation with its headquarters located in Tennessee. SHP may be served with process through its registered agent CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

## II.
## JURISDICTION AND VENUE

4. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Supplemental jurisdiction over the negligence claim against SHP is proper under 28 U.S.C. § 1367 because that claim is so related to the claim under § 1983 that it is part of the same case.

5. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to the cause of action occurred in the Eastern District.

## III.
## FACTUAL ALLEGATIONS

6. On May 13, 2018, Janet Hartman, a 44-year-old inmate at Angelina County jail, died from pneumonia only hours after the jail finally decided that she was not, in fact, "faking it."

7. Hartman's death was completely avoidable and would not have happened if Angelina County and SHP had not ignored her clearly declining health for weeks. Furthermore, jail policy relied almost exclusively on non-medical staff to recognize and

respond to medical emergencies, despite the fact that they had no training whatsoever to be able to do so.

8.  Throughout several weeks leading up to her death, Hartman repeatedly notified jail staff, both orally and in writing, that she was unwell. However, medical staff employed by SHP at the jail refused to even examine her.

9.  On April 24, 2018, Hartman filed a written "sick call slip" requesting medical care. In addition to complaining about shoulder pain, she wrote that "something is wrong," but that "it is not gas." Obviously this is referring to something other than her shoulder, but the only response was to "continue taking Tylenol" (Tylenol is an over-the-counter pain medication).

10. Although the call slip indicates Hartman was seen by medical staff, if that is true, she was not given even a cursory examination, because no vital signs were recorded. This is noteworthy because Plaintiff was taking medication for high blood pressure; it is nearly impossible to believe she would have been seen by a nurse without her blood pressure being measured. No other boxes on the slip are checked, such as "follow up required," "Patient was given medical instruction in regard to treatment plan," or "Patient advised to alert medical staff if condition worsens." In other words, nothing at all was done or communicated to Plaintiff.

11. On April 29, Hartman filled out a sick call slip saying, "I can't hold nothing down, I got diarrhea, I am weak and seeing black spots." She also indicated that this had been going on for three days.

12. Despite this worrying combination of symptoms, jail medical staff did not examine Hartman, and did nothing more than provide anti-diarrheal medication and advise her to drink more water.

13. This time, not a single box was checked on the call slip, including the one that would indicate Hartman had been actually seen by a nurse.

14. On May 4th, Hartman submitted an "Inmate Request Form," saying, "I need to see the Warden for a 1-on-1.  I have serious problems going on with me.  I would like to set up an appointment.  Thank you very much.  God bless you."

15. The only response she got was, "Please write what it is that may be ailing you on a grievance.  We do not send request forms to [the] Warden, only grievances."  Jail staff knew she was complaining about the lack of medical treatment ("what may be ailing you"), but they simply stiff-armed her request for help.

16. Around this time, Janet Hartman attended a hearing with her mother, Plaintiff Verline Hartman.  Her mother observed that Janet "looked like death," and was concerned enough to complain to the judge that Janet had been very sick, but the jail medical staff was ignoring her.  Verline asked the judge if she could get the jail to examine Janet.  The judge, recognizing that Janet was indeed seriously ill, sent a message to the jail medical staff alerting them to the fact that Janet required medical attention.  Deputy Herrington has stated in writing that he delivered the judge's note; however, medical staff still refused to examine her.

17. On May 13, at approximately 3 p.m., Verline Hartman called the jail because she was concerned about Janet and the fact that the medical staff was ignoring her illness. Sgt. Taylor Spinks spoke with Verline and said he would check on Janet personally.

18. Meanwhile, hallway trustee Edwena Summers had observed that Janet Hartman had been "defecating and vomiting most of the day." Summers was told by a correctional officer named Munn to fill out yet another sick call slip for medical. This is a bit like smelling smoke and deciding to write a letter to the fire department. No correctional officers did anything to notify medical staff that Janet was seriously ill.

19. When Sgt. Spinks arrived to check on Hartman, he refused to enter her cell due to the overpowering odor. Instead of showing any concern for Hartman's health, he left the area and instructed Officer Munn to have deathly-ill Hartman get dressed and come out to see *him*.

20. Another inmate, Sheila Wells, has stated that she had to beat on the door of the cell to let Officer Munn know how sick Hartman was. By the time anyone actually went in to see her, it was approximately 4 p.m. At that time, Hartman was observed to be "very weak with her head leaning to one side." Her "face was red with bluish tint around her mouth." Hartman was barely able to speak, but communicated that she had been "feeling like this for about three weeks." Her fingers and toes were blue; her oxygen level was only 75%, and her blood pressure was 180/92. Her breathing was labored and made "crackling" sounds.

21. Hartman was finally transported to the hospital and arrived there at 4:32 p.m. The admitting doctor stated that when she arrived, she was in severe respiratory distress

with severe pneumonia and lungs full of fluid. He also noted that at that time, Hartman had just a 5% chance of survival. Her eyes were "rolling around," she was vomiting into a CPAP device, and she was exhibiting agonal breathing. Agonal breathing is a very serious medical condition that frequently signals imminent death.

22. Hartman died only a few hours later, at 7:25 p.m. An autopsy concluded that the cause of death was pneumonia.

23. Hartman would not have died from pneumonia had staff at the Angelina County Jail not ignored numerous indications that Janet was severely ill, including Janet's own sick calls, her statements that her medication made her feel worse, and a note from a judge.

24. Multiple inmates have stated that the jail staff thought Janet was "faking" her illness. Rainbow Kessner, who had only come to the jail 11 days before Janet's death, said Janet had "just laid there and deteriorated." "We had told the nurses about Hartman. . . . We told Ms. Munn and she acted like she was concerned but the officers thought that Hartman was just complaining."

## IV.
## FIRST CAUSE OF ACTION: MEDICAL NEGLECT IN VIOLATION OF 42 U.S.C. § 1983

25. All preceding paragraphs are incorporated here by reference.

26. At all times material to this Complaint, Angelina County and SHP acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Angelina County.

27. Angelina County has a non-delegable duty under Texas law and the U.S. constitution to provide medical care to inmates at its Jail. The County cannot absolve itself of this duty by simply paying someone else to carry it out.

28. Likewise, by accepting the contract with Angelina County, SHP has taken on that same duty to meet the standard of care in its provision of medical services at the Jail.

29. Angelina County's policymaker with authority over the Jail is its Sheriff, or alternatively, the Commissioners Court. The Angelina County policymaker was fully aware of the contents of the County's contract with SHP, which specified required staffing and made obvious the reliance on untrained correctional officers to recognize and respond to medical emergencies.

30. Management at SHP has policymaking authority over the policies described in this lawsuit and utilized at the Angelina County Jail. The Chief Executive Officer, or in the alternative, the Chief Operating Officer has policymaking authority for policies of the type alleged in this lawsuit. Alternatively, SHP, as a single private entity, is itself a "policymaker" for purposes of § 1983 liability.

31. The policies described in this Complaint are the product of both Angelina County and SHP, which collaborated and agreed on exactly how the provision of medical care at the Jail was to be carried out.

32. Acting under color of law, Defendants Angelina County and SHP deprived Plaintiff of the rights and privileges secured to her by the Eighth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide

constitutionally adequate medical treatment.  Plaintiff pleads her case under the alternative theories of conditions of confinement and episodic acts or omissions.[1]

33. The constitutionally inadequate system of medical care – the conditions at the Angelina County Jail – caused Plaintiff to suffer a deprivation of her constitutional rights.  These conditions of Plaintiff's confinement as set forth in this Complaint were not reasonably related to a legitimate governmental purpose.  These conditions amounted to punishment before Plaintiff was judged guilty and thus violated due process of law.  Angelina County's and SHP's intent to punish Plaintiff may be inferred from their decision to expose pretrial detainees such as Plaintiff to an unconstitutional condition.  In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of pretrial confinement.

34. Angelina County and SHP are liable to Plaintiff under 42 U.S.C. § 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail.

35. The challenged conditions set forth in this Complaint violated Plaintiff's constitutional rights and were the foreseeable product of the Angelina County's and SHP's decision to provide insufficient medical staff the Jail.  There is no doctor on site, and the nurses frequently fail to physically examine an inmate who submits a request for care.  Instead, the Jail relies on non-medical correctional staff to identify and respond appropriately to emergencies.

36. However, Angelina County and SHP did not sufficiently train and/or supervise their staff at the Jail, including non-medical correctional officers, to ensure that they were able to recognize and respond to emergencies properly.

---

[1] Plaintiffs may plead the alternative theories of conditions of confinement and episodic acts or omissions in a jail medical care case under 42 U.S.C. § 1983. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

37. The above policies, either individually or in combination, prevent a pretrial detainee at the Angelina County Jail from having access to medical care. None of these policies have a legitimate penological goal. Preventing a pretrial detainee's access to medical care cannot be seen as anything other than an unconstitutional punishment, and is therefore an unlawful condition of confinement.

38. In the alternative, Angelina County and SHP are liable because the policies, customs or practices described above, including a failure to train and/or supervise their employees, were the moving force behind episodic acts or omissions which resulted in violations of Plaintiff's constitutional rights and caused the harm described in this lawsuit .

39. By their actions and/or inactions as described above, Defendants Angelina County and SHP have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

## V.
## SECOND CAUSE OF ACTION: NEGLIGENCE

40. All preceding paragraphs are incorporated herein by reference.

41. Defendant SHP, as the contracted medical provider for Angelina County Jail, had a duty to provide competent medical care to Janet Hartman while she was detained at the jail.

42. SHP breached this duty through the actions and/or omissions of its employees, who abjectly failed to meet the standard of care in providing medical services to Janet Hartman.

43. SHP's actions and/or inactions were the cause-in-fact of Janet Hartman's death.

44. Janet Hartman's death was the foreseeable consequence of failing to provide any medical care whatsoever despite numerous signs, exhibited over a period of weeks, that she was gravely ill.

## VI.
## DAMAGES

45. As a direct and proximate result of the above described acts and omissions of Defendants, and/or individuals for whom the Defendants are legally responsible, Plaintiff, and those interests that Plaintiff legally represents, have suffered serious damages. Accordingly, Plaintiff seeks to recover all actual, compensatory, and exemplary damages which have resulted from Defendants' above described conduct. These damages include, but are not necessarily limited to, the following:

   a) Janet Hartman's physical suffering;

   b) Janet Hartman's mental pain and anguish;

   c) All reasonable and necessary burial expenses associated with Janet Hartman's death;

   d) Verline Hartman's mental pain and anguish arising from the death of her daughter, both past and future;

   e) Verline Hartman's damages arising from the loss of companionship and society of her daughter, both past and future;

   f) Verline Hartman's damages arising from the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that she would have received if Janet Hartman had lived, both past and future;

   g) D.R.'s mental pain and anguish arising from the death of her mother, both past and future;

    h) D.R.'s damages arising from the loss of companionship and society of her mother, both past and future;

    i) D.R.'s damages arising from the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value she would have received if Janet Hartman had lived, both past and future;

    j) Punitive damages against all Defendants; and

    k) Pre- and post-judgment interest in accordance with Texas law.

## VII.
## JURY DEMAND

46. Plaintiff demands a trial by jury.

## VIII.
## PRAYER

FOR THE REASONS STATED ABOVE, Plaintiffs Verline Hartman and Louvinia Lambert, as next friend to minor D.R., request that Defendants Angelina County and SHP be summoned to appear and answer herein and that upon final trial or hearing, a judgment be entered in favor of the Plaintiff and against the Defendants as follows:

    a) Awarding Plaintiffs actual damages in an amount that is within the jurisdiction al limits of this Court;

    b) Awarding Plaintiffs punitive or exemplary damages in an amount that is within the jurisdictional limits of this Court;

    c) Awarding Plaintiffs reasonable and necessary attorney's fees and costs of court;

    d) Awarding Plaintiffs pre-judgment interest at the highest rate permitted by law;

    e) Awarding Plaintiffs post-judgment interest at the highest rate permitted by law; and

      f)  Awarding Plaintiffs all such other and further relief, at law or in equity, to which she may show herself to be entitled.

Respectfully submitted,

By: *Don Tittle*
    Don Tittle
    State Bar # 20080200
LAW OFFICES OF DON TITTLE, PLLC
6301 GASTON AVENUE, SUITE 440
DALLAS, TEXAS 75214
214/522-8400 – TELEPHONE
214/389-1002 – FAX
***ATTORNEY FOR PLAINTIFFS***