IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| Louvinia Lambert, | § | |
| as next friend to D.R., a minor, and | § | |
| Verline Hartman, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:20-cv-00097 |
| | § | |
| Angelina County, Texas | § | |
| and Southern Health | § | |
| Partners, Inc., | § | |
| | § | |
| *Defendants*. | § | |

---

**PLAINTIFFS' RESPONSE TO ANGELINA COUNTY'S
MOTION TO DISMISS**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Louvinia Lambert, as next friend to D.R., a minor, and Verline Hartman, file this Response to Defendant Angelina County's Motion to Dismiss, and would respectfully show the Court the following:

**I. PROCEDURAL BACKGROUND AND SUMMARY**

As it pertains to Defendant Angelina County ("the County"), this is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 alleging a violation of Plaintiff's Fourteenth (or alternatively, Eighth) Amendment rights. The County violated her rights by designing a system of medical care at its Jail that was incapable of recognizing and responding to medical emergencies. The County filed a Rule 12 Motion asking the Court to dismiss the case against it, and Plaintiffs now Respond.

## II. ARGUMENTS AND AUTHORITIES

### A. Standard of Review.

The fact that this case is based on a claim against a municipality does not affect the standard of review for a motion to dismiss based on a plaintiff's alleged failure to state a claim upon which relief can be granted. All the traditional rules that favor plaintiffs on motions to dismiss continue to apply: the Court cannot look beyond the pleadings, must accept the allegations in the complaint as true, and must view them in the light most favorable to the plaintiff.[1] This includes drawing all inferences in the Plaintiffs' favor.[2]

In sum, Plaintiffs are merely required to state a claim to relief that is "plausible on its face."[3] The Supreme Court has held that the *plausibility* requirement does not require the plaintiff to show a greater *probability* of success than the defendant at the pleading stage; it simply requires the plaintiff to "raise a reasonable expectation that discovery will reveal evidence to support the allegation."[4]

### B. Plaintiffs Have Stated a Plausible Claim That Angelina County Policy at Its Jail Was Constitutionally Deficient and Caused the Death of Janet Hartman.

The elements of of municipal liability under *Monell* are these: a plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[5]

---

[1] *See, e.g.*, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[2] *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). It is worth noting that the County's "Factual Background" in its Motion substantially abbreviates Plaintiffs' allegations, omitting any facts that may be damaging to its case. For example, in its description of the events of May 13, the County mischaracterizes the pleadings to make it appear Sgt. Spinks and the jail staff attended to Janet Hartman immediately after receiving a call from Verline Hartman. County Motion to Dismiss at 3. This is completely counter to the alleged facts, which state that Spinks refused to even enter Hartman's cell, and that despite obvious signs that Hartman was gravely ill, it was another hour before anyone actually saw her. Pls.' Complaint at ¶¶ 17–21.
[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)).
[4] *Twombly*, 550 U.S. at 556.
[5] *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

Plaintiffs have sufficiently alleged all three:

(1) The policy in question is best viewed as a combination of decisions by Jail policymakers which create a system that is incapable of providing constitutionally adequate care. First, there is no physician on staff at the Jail.[6] Instead, there is a small nursing staff that frequently fails to physically examine inmates, even when they complain that they are ill.[7] Therefore, because of this lack of direct contact, the burden falls on non-medical correctional officers to identify and respond appropriately to reports of illness and health emergencies.[8] However, this system is doomed to fail because those correctional officers have no training whatsoever to be able to recognize when someone needs emergency treatment.[9] This lack of training was expressly alleged, and can also be inferred from the fact that Janet Hartman's health had been visibly deteriorating for weeks, yet she was consistently ignored by both guards and medical staff.[10] It may be further inferred from the fact that multiple inmates have stated that the Jail staff thought Janet was faking her illness.[11] Consider the fact that when Janet Hartman arrived at the hospital, doctors there gave her only a 5% chance of survival.[12] And indeed she died only a few hours later.[13] It is simply impossible to think that anyone sufficiently trained to recognize medical emergencies would have let an inmate deteriorate from pneumonia, past the point of no return, without lifting a finger to intervene or help. Plaintiffs are not suggesting that every guard at the Jail needed to be medically licensed in order to pass constitutional muster; rather, *if* the Jail decides to rely completely on the guards for identifying medical emergencies, as Angelina County did, it must provide some minimum amount of training so

---

[6] Pls.' Complaint at ¶ 35.
[7] Pls.' Complaint at ¶ 35.
[8] Pls.' Complaint at ¶ 35.
[9] Pls.' Complaint at ¶ 36.
[10] Pls.' Complaint at ¶¶ 8–16, 20, 24.
[11] Pls.' Complaint at ¶ 24.
[12] Pls.' Complaint at ¶ 21.

that they can do so. Here, there was no training provided *at all*.[14]

## *"Complete" Failure to Train vs. Individual Failure*

To whatever extent this may be viewed as a "failure to train" claim (as opposed to a broader, overarching policy that contemplates a lack of direct medical examination), especially in the context of a motion to dismiss, there is an important distinction to be made between allegations of a *complete* failure to train (such as this one) and claims that "an otherwise sound [training] program has occasionally been negligently administered, or in which an officer received appropriate training that she then failed properly to obey."[15] This concept is explained thoroughly in *Littell v. Houston Independent School District*. The *Littell* Court first discussed the Supreme Court's decision in *Canton v. Harris*, which recognized a failure to train claim where a municipality "fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."[16] This is referred to as a "complete" failure to train, as opposed to individual failures of an otherwise valid training system, which require allegations of a "pattern" of failures.[17] In other words, the required "objective deliberate indifference" of the municipality in adopting the offensive policy can be inferred from this *complete* failure to train, where it normally would be inferred from a pattern of failures.[18] This is precisely what is alleged here: the Jail has a clear constitutional duty to recognize inmates' medical emergencies and provide adequate care. Due to the lack of contact between inmates and actual medical staff, the other correctional officers act as gatekeepers to the inmates' medical care. These guards are certain to face recurrent situations where they must recognize medical emergencies and react appropriately, yet the County has *completely*

---

[13] Pls.' Complaint at ¶ 22.
[14] Pls.' Complaint at ¶ 7.
[15] *Littell v. Houston Ind. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018).
[16] *Littell*, 894 F.3d at 624–25 (citing *Canton v. Harris*, 489 U.S. 378, 396 (1989)).
[17] *Littell*, 894 F.3d at 624–25.
[18] *Littell*, 894 F.3d at 624.

4

*failed to provide any such training at all.* This fits squarely into the type of claim described in *Canton* and *Littell*.[19] Naturally, Plaintiffs may have to show more at the summary judgment stage, but the above allegations are sufficient to state a plausible claim and survive a 12(b)(6) motion.

(2) The County does not dispute Plaintiffs' allegations that its Sheriff was the policymaker for the Jail. It only asserts in conclusory fashion that Plaintiffs have not offered "any specific factual allegations" that the Sheriff's was aware of these policies.[20] On the contrary, it was expressly alleged that the Sheriff "was fully aware of the contents of the County's contract with SHP, which specified required staffing and made obvious the reliance on untrained correctional officers to recognize and respond to medical emergencies."[21] Moreover, the Sheriff *runs the Jail* and is its admitted policymaker. To the extent that the County is arguing the Jail's own policymaker has no idea how medical care is provided at the Jail or what kind of training its guards receive, that argument has no merit. Such knowledge can be easily inferred, especially when it comes to *express policies*, as alleged here, as opposed to an informal custom or practice.

(3) The policies described above precluded both timely medical intervention that Janet Hartman repeatedly begged Jail medical staff for.[22] This does not meet the minimum standard of medical care required by the constitution to be provided to inmates, and directly resulted in Janet Hartman's death.[23] As previously described, in a system where there is no doctor on site and nurses routinely refuse to examine inmates complaining of illnesses, there must be *someone* present who can perform a "gatekeeping" function and Jail medical staff or emergency personnel when an

---

[19] *See also Drake v. City of Haltom*, 106 F. App'x 897, 900 (5th Cir. 2004) (reversing grant of motion to dismiss because the Court was "unwilling to say, at th[e pleading stage], that it is not obvious that male jailers who receive no training and who are left virtually unsupervised might abuse female detainees").
[20] County Motion to Dismiss at 11.
[21] Pls.' Complaint at ¶ 29.
[22] Pls. Complaint at ¶¶ 8–20.
[23] Pls. Complaint at ¶¶ 7, 37–39.

<mark>5</mark>

emergency does occur.  At the Angelina County Jail, the guards were the only ones who could possibly perform this function, yet they had no training whatsoever on how to do so.[24]  Their knowledge was so lacking that they believed Janet was faking her illness.[25]  As a direct result, Janet Hartman's pneumonia—a highly treatable condition—and deteriorating health were ignored for weeks until it was far too late to save her life.

### C. Angelina County Has Mischaracterized Plaintiffs' Claims as "Episodic Acts or Omissions," Rather Than Unlawful Conditions of Confinement.

The County argues that Plaintiffs have insufficiently alleged an underlying constitutional violation, specifically, that Plaintiffs have insufficiently alleged deliberate indifference by any individual.[26]  However, a plaintiff must show deliberate indifference only where the constitutional violation resulted from an episodic act or omission of a state actor.[27]  Angelina County has overlooked the fact that Plaintiffs' claim is that the County maintained *unconstitutional conditions of confinement* in its Jail.  In a conditions of confinement claim, as opposed to an "episodic acts or omissions" claim,

> the court asks whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective[.]"  If it is, the condition or restriction does not amount to unconstitutional "punishment."  "Conversely, if a restriction or condition is not reasonably related to a legitimate goal . . . a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."  **Unlike an episodic act or omission claim, a condition of confinement claim involves no independent inquiry into the Jail officials' state of mind, such as whether they acted with "deliberate indifference."**[28]

In other words, in a conditions of confinement claim, it can be inferred that the policymaker acted "deliberately" or "consciously" because the conditions it imposed on the inmates have been found to

---

[24] Pls.' Complaint at ¶ 36.
[25] Pls. Complaint at ¶ 24.
[26] County Motion to Dismiss at 7.
[27] *Duvall v. Dallas County*, 631 F.3d 203, 207 (5th Cir. 2011).
[28] *Shepherd v. Dallas County*, Civ. Act. No. 3:05-cv-1442-D at *7–8 (N.D. Tex. Mar. 6, 2008).

6

be unlawful *punishment*, which is *per se* a deliberate act. "[T]he inquiry in a condition of confinement case begins with the presumption that intent exists."[29] Put another way, "in cases . . . that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest."[30] The alleged unlawful system of medical care coverage described throughout this brief is not reasonably related to any legitimate penological goal; rather, it is motivated solely by a desire to save money on both training and staffing. As such, it comprises an unconstitutional punishment of the inmates at the Jail, including Janet Hartman.

## III. CONCLUSION AND OPPORTUNITY TO REPLEAD

As described above, Plaintiffs have alleged more than sufficient facts upon which it may be inferred that Angelina County maintained unconstitutional policies that violated Plaintiff's right to basic medical care while she was incarcerated at the Angelina County Jail. The County's Motion should be denied. Should the Court determine that Plaintiffs have not stated their best case and could cure a deficient pleading with additional facts or clarifications, Plaintiffs respectfully request the opportunity to replead.

---

[29] *Id.* at *8 (citing *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). *See also*
[30] *Duvall*, 631 F.3d at 207.

Respectfully submitted,

By:   /s/ *Don Tittle*
    Don Tittle
    State Bar No. 20080200
    don@dontittlelaw.com
    Roger Topham
    State Bar No. 24100557
    roger@dontittlelaw.com
LAW OFFICES OF DON TITTLE
6301 Gaston Avenue, Suite 440
Dallas, Texas 75214
(214) 522-8400
(214) 389-1002 (fax)
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon counsel for Defendants by electronic service via the Court's CM/ECF system on this the 23rd day of September, 2020:

Larry J. Simmons
State Bar No. 00789628
Federal I.D.No. 18830
Carmen Jo Rejda-Ponce
State Bar No. 24079149
Federal I.D. No. 1366666
William N. Wilson II
State Bar No.21733100
Federal I.D. No.7931
GERMER PLLC
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
(713) 650-1313–Telephone
(713) 739-7420–Facsimile
*Attorneys for Defendant*
*Angelina County, Texas*

James L. Cook
TX Bar No. 24034387
MORGAN, COOK & BECK, L.L.P.
3512 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 793-5651
Telecopier: (903) 794-5651
Email: jlcook@mcblawfirm.com
*Attorneys for Defendant*
*Southern Health Partners*


*/s/ Don Tittle*
Don Tittle